**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lawrence Dean FAULKNER,
Defendant–Appellant.**

Nos. 89–10338, 89–10339.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 15, 1990.

Decided May 13, 1991.

As Amended on Denial of
Rehearing and Rehearing En Banc
Dec. 24, 1991.

Candace A. Fry, Sacramento, Cal., for defendant-appellant.

Thomas J. Hopkins, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before CHOY, Senior Circuit Judge, FLETCHER, Circuit Judge, and FITZGERALD,* Senior District Judge.

## ORDER

The opinion filed May 13, 1991, 934 F.2d 190 (9th Cir.1991), should be amended as follows: add a footnote at page 194, following "agreement" at the end of the first full paragraph as follows:

In *United States v. Loveday,* 922 F.2d 1411, 1417 (9th Cir.1991), we held that section 5K2.0 allowed upward departure on the basis of non-conviction misconduct only if the misconduct was "relevant to the act of conviction." *Loveday* thus set out one limit on upward departure under section 1B1.4. Although the defendant in *Loveday* had entered into a plea agreement, the issue subsequently decided in *Castro Cervantes,* of the restriction section 6B1.2(a) imposes on upward departure in the context of a plea agreement, apparently was not raised in *Loveday.*

With this addition, the panel as constituted in the above case has voted to deny the petition for rehearing.

The full court has been advised of the suggestion for rehearing en banc and no judge of the court has requested a vote on it. Fed.R.App.P. 35(b).

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

* Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

OPINION

FLETCHER, Circuit Judge:

Faulkner appeals the district court's upward departure from the Sentencing Guidelines following his conviction on five counts of bank robbery. Faulkner argues that the district court failed to give adequate reasons for departure and for the extent of departure. We vacate and remand for resentencing.

## FACTS AND PRIOR PROCEEDINGS

Faulkner was indicted under 18 U.S.C. § 2113(a) on eight counts of bank robbery in two separate indictments, one for three robberies in the Eastern District of California and one for five robberies in the Northern District. The proceedings were consolidated in the Eastern District.

Faulkner performed all of his charged robberies with the aid of a toy gun. In his most lucrative heist, he stole $27,205. The charged robberies were committed between March and May of 1988. When Faulkner committed the last robbery, he was awaiting sentencing on a state charge of false imprisonment to which he had pleaded *nolo contendere*. After the FBI apprehended Faulkner in connection with the bank robberies, he admitted to the FBI (or at the very least provided inculpatory evidence) that he had committed five other robberies in addition to the eight for which he was eventually charged. He thus committed a total of thirteen robberies. Pursuant to a plea bargain, Faulkner pleaded guilty to five of the eight charged counts. In exchange, the government agreed to recommend dismissal of the three remaining counts and to not bring future charges on the five uncharged robberies.

Applying the Sentencing Guidelines, the district court found Faulkner's total offense level to be 22 and his criminal history category to be IV, which resulted in a 63 to 78 month sentencing range. Faulkner was sentenced to 144 months in prison. The parties dispute only the district court's decision to depart from the range; they do not dispute the court's determination of the range. Nonetheless we briefly review the

determination, because to do so brings the appealed departure question into sharper relief.

### A. *Offense Characteristics*

At the time Faulkner was sentenced, the June 1988 version of the Guidelines was in effect. The base offense level for each robbery was 18, and depending on the amount of money taken, either one or two points were added for each robbery. U.S.S.G. § 2B3.1 (June 1988). Faulkner's most profitable robbery earned him $27,205 and an adjusted offense level of 20. Under chapter 3, section D of the Guidelines, which deals with multiple-count convictions, Faulkner was responsible for five "units" of bank robbery, which required the addition of four levels to his adjusted offense level of 20. U.S.S.G. § 3D1.4. His combined offense level was 24.

Because Faulkner readily admitted his guilt when first apprehended, he earned a two point reduction for acceptance of responsibility, resulting in an offense level of 22. U.S.S.G. § 3E1.1.

### B. *Criminal History*

Prior to sentencing in this case, Faulkner had been convicted of robbing a shoe store, for which he was sentenced to five years in prison. This earned him three points under U.S.S.G. § 4A1.1(a). Faulkner also had been convicted of four misdemeanors, each earning him a point under U.S.S.G. § 4A1.1(c). Finally, because Faulkner was on parole when he committed the instant bank robberies, he received two additional points under U.S.S.G. § 4A1.1(e).

He thus had a total of nine criminal history points, placing him in category IV.

### C. *Grounds for Departure*

The presentencing report (PSR) recommended departure based on two factors: first, that Faulkner committed eight bank robberies for which no convictions were obtained; second, that had Faulkner been sentenced for the false imprisonment charge, he would have been a "career offender" under U.S.S.G. §§ 4B1.1, 4B1.2, with a criminal history category of VI and

a total offense level of 32, meaning that his sentence would have been 210 to 262 months.[1] The PSR recommended an upward departure based on a five-level increase in the total offense level. The recommendation was thus to treat Faulkner as a 27–point offender with a criminal history category of IV and to sentence him to 100–125 months.

In sentencing Faulkner to 144 months, the district judge departed further than recommended in the PSR. He said, "As I understand the Guidelines law, and there isn't a lot of it yet, once I decide to depart I don't have to give ... a specific reason why I picked the particular number." He explained the basis for his upward departure as follows:

> The defendant committed, and admitted, thirteen bank and savings and loan robberies during the investigation on this case.... The Guidelines, in my judgment, do not capture the enormity of the defendant's crime spree.
>
> After six robberies, the robberies become freebies, in effect, under the Guidelines, they're not counted.
>
> Also, defendant was an unsentenced prisoner on a State crime of violence at the time I sentenced, and at the time the Probation Officer's report was prepared that I was working from. Had his sentences been included in the then pending State charges he'd have been a career criminal....
>
> The Guidelines range would have been 210 to 262 months.

After the judge asked the prosecuting attorney to respond, the prosecutor added that the toy gun would be an additional reason for departure. The judge incorporated that reason as well.

The defense attorney objected on the grounds that the Sentencing Commission already took multiple robberies into account, that the state crime of violence (the false imprisonment) had been dismissed since the time of the PSR,[2] and that the Commission intended not to allow departures for toy guns.

## DISCUSSION

The district judge gave three reasons for departure. We discuss each reason in turn.

### A. The Five Uncharged Bank Robberies and the Three Dismissed Bank Robberies

The district judge departed upward based on the five robberies for which the government specifically agreed that Faulkner would not be charged in the future, and the three robbery counts that the government agreed to dismiss as a result of the plea bargain. In *United States v. Castro–Cervantes*, 927 F.2d 1079 (9th Cir.1991), we recently examined an upward departure based on a similar ground. The defendant in that case had pleaded guilty to two counts of a seven-count indictment and agreed to accept responsibility for two uncharged bank robberies in exchange for the government's promise to drop the remaining five counts. At sentencing, the district judge departed upward based in part on the fact that the defendant had committed nine robberies. We found this departure inappropriate, noting that the Guidelines provide that a district judge may accept a plea agreement if "the remaining charges adequately reflect the seriousness of the actual offense behavior." U.S.S.G. § 6B1.2(a) (policy statement). We stated that "[t]he plain implication of this section is that if the sentencing court believes that the re-

1. The PSR, in computing an offense level of 32, apparently did not deduct two points for acceptance of responsibility.

2. There was a long period of time between the PSR and the sentence challenged in this case. Faulkner had originally been sentenced in the window period between the Ninth Circuit's invalidation of the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551–3586, pursuant to which the guidelines were issued, and the Supreme Court's upholding them in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Faulkner had been given a 30–year sentence under the old system, which, unlike his guidelines sentence, was subject to the possibility of parole. Faulkner filed a habeas petition under 28 U.S.C. § 2255 to have his sentence reconsidered.

maining charges do not adequately reflect the seriousness of the defendant's behavior, the court should not accept the plea agreement." *Castro–Cervantes*, at 1082. Because rejection of the plea agreement is the appropriate remedy for a plea bargain that does not adequately reflect the nature of the crimes committed, we held that departure was not permissible on this basis.

Our holding in *Castro–Cervantes* governs the result reached here. Faulkner pleaded guilty to five counts of robbery in exchange for the government's promise to recommend dismissal of three counts of robbery and to permanently refrain from charging him for five other robberies that he had admitted to committing. The district court accepted this plea bargain, thereby implicitly finding it fair from the court's perspective. It would be patently unfair if the court were then allowed to hold Faulkner to his part of the bargain—his plea of guilty on five counts—while simultaneously denying him the benefits promised him from the bargain by relying on the uncharged and dismissed counts in sentencing him.

To reach any other result would undermine the integrity of the plea bargaining system. The great majority of federal criminal cases are resolved by plea agreements pursuant to which the defendant pleads guilty to some counts in exchange for the government's agreement to dismiss or not to charge other counts. That system is a crucial tool in preventing the flood of criminal cases now overwhelming courts from completely inundating them. To allow judges to depart from the Guidelines on the basis of counts that have been dropped pursuant to plea agreements would severely undermine the incentive of defendants to enter into plea bargains. As we stated in *United States v. Enriquez–Munoz*, 906 F.2d 1356, 1359 (9th Cir.1990), "Were the plea bargaining process to lose its effectiveness as a result of judges' ignoring the benefits of the plea bargain to which defendants are entitled, the consequences for both the criminal and civil justice system might well be disastrous."

■ The government nonetheless argues that departure for uncharged offenses is justified under U.S.S.G. § 1B1.4, which provides:

> In determining the sentence to impose within the guideline range, or whether departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.

We dealt with this argument, too, in our opinion in *Castro–Cervantes*. We noted that, while taken alone, Section 1B1.4 would appear to authorize the district court to consider freely the information about the uncharged and unconvicted offenses as well as any other information in sentencing, Guideline § 1B1.4 does not, in fact, stand alone. Rather, it must be considered in relation to the entire Guideline scheme of which it is but a part. Thus, we held in *Castro–Cervantes* that any free reign that Guideline § 1B1.4 appears to give district judges in sentencing is necessarily limited by Section § 6B1.2's directive regarding plea bargaining; accordingly, a district judge may not first accept a plea bargain and later consider dismissed charges in calculating a defendant's sentence.

Other Guideline provisions also limit the information that Guideline 1B1.4 allows a district judge to take into account insofar as that information may be used as a ground for departure from the Guideline range. Specifically, Section 5K2.0 and its authorizing statute, 18 U.S.C. § 3553(b), authorize departure only if the sentencing court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Section 5K2.0 therefore necessarily limits the range of information that a district judge may consider pursuant to Section 1B1.4 when departing from the Guideline range. *Cf.* U.S.S.G. 1B1.4 (commentary) ("Some policy statements do, however, express a Commission policy that certain factors should not be considered for any purpose, or should be considered only for limited purposes."). To interpret § 1B1.4 without reference to § 5K2.0 to authorize the district court to

depart on the basis of any information that the district court wished to consider, as the government would have it do, would undermine the overarching purpose of the Guidelines—the achievement of uniformity in sentencing. *Accord United States v. Bruno*, 897 F.2d 691, 696 (3d Cir.1990) ("Any other reading ... would severely undermine the sentencing scheme envisioned by Congress in § 3553(b) and incorporated in the implementing guidelines.").

The limitations imposed by § 5K2.0 on the information that a district judge may take into account in departing from the Guidelines also bar an upward departure on account of the eight crimes either not charged or dismissed as a result of the plea bargain. As clearly demonstrated by section 6B1.2(a)'s directive regarding plea agreements, the Commission specifically considered that bargained plea agreements would result in the dismissal of counts and that judges in determining whether to accept a plea would need to evaluate whether the "remaining charges adequately reflect the seriousness of the actual offense behavior." As the Commission considered this circumstance in formulating the Guidelines, section 5K2.0 barred the district judge in this case from departing on the basis of the counts dropped and not charged pursuant to the plea agreement.[3]

### B. *The Pending California Case*

The district judge cited as a second reason for departure that the defendant was awaiting sentencing after a plea of *nolo contendere* for false imprisonment when the defendant committed his last bank robbery. He suggested that had the defendant been sentenced on that charge before May 10, 1988, the date of the robbery, he would have been a career offender within the meaning of U.S.S.G. § 4B1.1. He stated further that such an offender would be sentenced under Category VI with a base offense level of 32, resulting in a sentence in the range of 210–262 months. He im-

plied that it was only a quirk of timing, a technicality, that saved Faulkner from the ignominy and long years of confinement suffered by a career offender. The judge, expressing misgivings that he was being too lenient, handed down a 144 month sentence.

In reviewing a sentence departing from the guidelines, we must consider the reasons, both for departure and for the extent of departure, actually articulated by the sentencing court. 18 U.S.C. § 3742(e)(3)(B); *United States v. Wells*, 878 F.2d 1232, 1233 (9th Cir.1989); *United States v. Cervantes–Lucatero*, 889 F.2d 916, 918 (9th Cir.1989). If the circumstance relied on as a basis for departure is improper, we generally remand for resentencing within the guidelines. *United States v. Hernandez–Vasquez*, 884 F.2d 1314, 1316 (9th Cir.1989); *cf. United States v. Enriquez–Munoz*, 906 F.2d at 1358 (no remand where clear from record that departure inappropriate and maximum guidelines sentence has already been served). If the circumstance relied on is proper but the reasons given for the extent of departure are inadequate, we remand, requiring that the degree of departure be adequately explained. *Cervantes–Lucatero*, 889 F.2d at 919. When the district court departs on the ground that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct, the degree of its departure must be guided by analogy to the criminal history categories. *Id.* We affirm the degree of departure if the analogy is reasonable. *United States v. Montenegro–Rojo*, 908 F.2d 425, 431 (9th Cir.1990).

Section 4A1.3 of the Sentencing Guidelines makes it clear that a departure is warranted when "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct." Two examples of such information include "prior similar adult criminal conduct not

---

**3.** In *United States v. Loveday*, 922 F.2d 1411, 1417 (9th Cir.1991), we held that section 5K2.0 allowed upward departure on the basis of non-conviction misconduct only if the misconduct was "relevant to the act of conviction." *Loveday* thus set out one limit on upward departure

under section 1B1.4. Although the defendant in *Loveday* had entered into a plea agreement, the issue subsequently decided in *Castro Cervantes*, of the restriction section 6B1.2(a) imposes on upward departure in the context of a plea agreement, apparently was not raised in *Loveday*.

resulting in a criminal conviction" and the commission of the instant offense "while on bail or pretrial release for another serious offense." *Id.* Although this section may have provided an adequate basis for departure for the false imprisonment charge,[4] the district court did not rely on it to justify either its departure or the degree of its departure. Rather, it analogized Faulkner's conduct to that of a career offender and used that analogy to justify its decision to almost double Faulkner's maximum guideline sentence. We therefore consider only whether the use of that analogy was reasonable.

It is an open question whether, had Faulkner been sentenced prior to May 10, 1988, he would have been a career offender. A defendant is a career offender if he has, *inter alia*, "at least two prior felony convictions of ... a crime of violence[.]" U.S.S.G. § 4B1.1. Faulkner had one felony conviction of a crime of violence dating back to 1980, when he robbed a shoe store. And it may be that Faulkner's false imprisonment charge constituted a crime of violence. A "crime of violence" within the meaning of the Guidelines "has as an element the use, attempted use, or threatened use of force against the person of another," U.S.S.G. § 4B1.2, comment. (n.2). Under California law, a felony false imprisonment is false imprisonment "effected by violence, menace, fraud, or deceit." Cal.Penal Code § 237. Violence does not seem to be a *necessary* element, but according to the presentence report, Faulkner, in committing his particular false imprisonment, used a threat of force to attempt to commandeer a car. We need not and do not decide the question whether the false imprisonment was a "crime of violence" within the meaning of U.S.S.G. § 4B1.2. We assume for the purpose of argument that it was such a crime; for even if it was a "crime of violence," Faulkner was not convicted of the crime. In fact, at the time of the sentencing hearing now under review, the State of California had dismissed the charge altogether, notwithstanding the fact that Faulkner had pleaded *nolo contendere*.

Thus the question before us is narrow: is it reasonable for a sentencing court to justify the degree of its departure by analogizing to the career offender provisions of the guidelines, when the defendant is not a career offender because he had not been convicted of two crimes of violence at the time he committed the instant offense?

We believe that such an analogy is unreasonable for a number of reasons. First, a comparison of the purpose and structure of the ordinary criminal history provisions and the career offender provisions reveals that the analogy is inapt. The ordinary criminal history provisions in Part A of Chapter Four have the following structure: Sections 4A1.1 and 4A1.2, to the extent they count prior crimes in determining the criminal history category, count only crimes for which a conviction and sentence have been pronounced prior to sentencing for the instant offense. Those sections are followed, however, by section 4A1.3, a Policy Statement, which specifically allows for exceptions to the previous two sections' requirement of a conviction by allowing guided departures when other information provides a reliable substitute for a conviction.

The career offender provisions of Part B have a significantly different structure. Sections 4B1.1 and 4B1.2, like the first two sections of Part A, strictly require that there be convictions before the provisions come into play. But tellingly, there is no Policy Statement or commentary in Part B analogous to section 4A1.3 that provides for any exception to the requirement of a conviction. The Commission well knew how to indicate the circumstances under which the requirement of a conviction could be overlooked by the sentencing court, yet it gave no such indication in its commentaries on the career offender provisions. In light of the purpose and effect of the career offender provisions, the lack of an exception appears deliberate. The career offender provisions are strong medicine indeed; in this case an application of the provisions would result in a sentence *three*

---

**4.** Whether in fact it does provide a basis for departure should be considered by the district court on remand; we do not purport to decide the issue.

*times* the ordinary guideline range. The harshness of the remedy explains the absolute requirement of a final conviction.

Second we note that, although a guilty plea or *nolo contendere* plea is very strong evidence that a conviction will soon follow, such pleas are not foolproof evidence. This case illustrates the point. The state, for reasons not entirely clear from the record, dropped the false imprisonment charges against Faulkner at some time after he entered his plea.

A final reason for refusing to allow analogy by reference to the career criminal provisions is that they are too blunt an instrument to serve that purpose. Unlike the ordinary criminal history provisions, they do not function as a sliding scale fit for incremental measurements. Rather, they function as an on/off switch. Once the prerequisites for becoming a career offender are met, the sentence takes an extraordinary leap; *both* the base offense level *and* the criminal history category simultaneously increase. No other enhancement in the guidelines operates that way. *Sui generis* provisions, by their very nature, are not useful as analogues.

In sum, although we recognize that a departure based on criminal history may have been warranted in this case, the reasons given by the district judge for the departure and the extent of departure were inadequate. We therefore must remand this case for resentencing.

### C. *The Toy Gun*

At the time of sentencing, the government argued that the toy gun provided a basis for departure. The current guidelines make clear, however, that a toy gun is a "dangerous weapon," the use of which requires enhancement under the robbery guideline. U.S.S.G. § 1B1.1, comment. (n.1(d)). Our recent decision in *United States v. Smith*, 905 F.2d 1296 (9th Cir.1990), holds that even with regard to sentences pronounced before the November, 1989 guidelines took effect, toy guns were to be treated as dangerous weapons for which enhancement was appropriate. As the use of a toy gun during a crime was clearly a circumstance considered by the Commission in formulating the Guidelines,

it may not serve as a basis for departure from the Guideline range. U.S.S.G. § 5K2.0; *United States v. Nuno Para*, 877 F.2d 1409 (9th Cir.1989) (factors considered as enhancements by Guidelines may not serve as basis for departure). On remand, enhancement under the robbery guideline rather than departure would be the appropriate means by which to take into account Faulkner's use of a toy gun.

### CONCLUSION

We vacate the sentence and remand for resentencing. The robberies for which Faulkner was not charged or for which counts were dropped pursuant to the plea agreement may not be considered as a basis for departure. The district court may consider on remand whether Faulkner's criminal history warrants departure. If departure is warranted, the extent of departure must be guided by a reasonable analogy to the criminal history provisions of Chapter 4, Part A.

REMANDED.