974 F.2d 1344
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Abdullahi Abubakar MOHAMMED, Defendant-Appellant.
 No. 91-50852.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 20, 1992.*
Decided Sept. 8, 1992.
 
 1
 Before TANG, and CYNTHIA HOLCOMB HALL, Circuit Judges, and SHUBB,** District Judge.
 
 
 2
 Abdullahi Abubakar Mohammed removed letters sent by various financial and credit institutions from residential mail boxes in West Los Angeles. He appeals his 12-month prison sentence under the United States Sentencing Commission Guidelines ("U.S.S.G.") following his guilty plea to obstruction of correspondence, in violation of 18 U.S.C. § 1702. At sentencing, the district court considered evidence of stolen credit material subsequently seized from appellant's home as relevant conduct evidence in setting his offense level under U.S.S.G. § 2B1.1(b)(1)(E) and in increasing the offense level for more than minimal planning under U.S.S.G. § 2B1.1(b)(5). The court also denied a request for a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. We affirm.
 
 A. Relevant Conduct
 
 3
 Appellant argues that the use of the information obtained during the state investigation and search of his residence violated the spirit and letter of the plea agreement. "Plea agreements are contractual in nature and are measured by contract law standards." United States v. Keller, 902 F.2d 1391, 1393 (9th Cir.1990). We review the meaning and effect of the plea agreement de novo. See Braxton v. United States, 111 S.Ct. 1854, 1858 (1991).
 
 
 4
 The government and appellant arrived at a plea agreement after an exchange of memos. Reading the government's plea offer and appellant's confirming memorandum together, it is plain that the parties reached an agreement that the district court should not consider the conduct which formed the basis of Count I in determining the base offense level.[1] However, as the district court observed, neither memo addressed the issue of whether the extraneous evidence which formed the basis of the state charges may be considered in calculating the base offense level. Because the plea agreement did not specifically address the use of non-federal relevant conduct at sentencing, this is not an instance where the terms of the plea agreement might preclude the district court from considering non-federal relevant conduct evidence. See, e.g., United States v. Fine, 946 F.2d 650 (9th Cir.1991), hr'g en banc granted, 963 F.2d 1258 (1992); United States v. Faulkner, 952 F.2d 1066, 1070-71 (9th Cir.1992). Moreover, appellant understood at the time he entered into the plea agreement that the sentencing judge might consider conduct not encompassed in the dismissed count as relevant conduct. In the absence of a specific agreement pertaining to the non-federal relevant conduct, the district court properly examined "the full range of related conduct" in calculating the base offense level. United States v. Newbert, 952 F.2d 281 (9th Cir.1991) (court held that non-federal relevant conduct can fall within the purview of § 1B1.3(a)(2) of the guidelines), cert. denied, 112 S.Ct. 1702 (1992).
 
 
 5
 Mohammed also asserts that even if properly considered, the evidence found at his residence is not relevant conduct. The question "whether conduct extraneous to an offense of conviction is part of the same 'course of conduct' or 'common scheme or plan' as the offense of conviction so as to be considered 'relevant conduct' within the meaning of Guidelines § 1B1.3(a)(2), is reviewed for clear error." United States v. Hahn, 960 F.2d 903, 907 (9th Cir.1992).
 
 
 6
 Section 1B1.3(a)(2) provides that the specific offense characteristics contained within a guideline section will be determined by "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." In a case involving a pattern of theft, the commentary to § 1B1.3(a)(2) states that the sentencing judge should take into account the full range of conduct. Relying upon the relevant conduct language the district court enhanced Mohammed's sentence under § 2B1.1(b)(1) to reflect the evidence of $8,055 worth of unauthorized credit card charges incurred on some of the credit cards found in Mohammed's residence.
 
 
 7
 Mohammed maintains that the district court failed to make the findings necessary to support its relevant conduct analysis, particularly in light of this court's decision in United States v. Hahn. Hahn establishes "a factually-oriented test for determining whether a district court has clearly erred in considering as 'part of the same course of conduct or part of a common scheme or plan as the count of conviction' conduct which exists in 'discrete, identifiable units.' " Hahn, 960 F.2d at 909. That test requires that there be sufficient similarity and temporal proximity to reasonably suggest that repeated instances of criminal behavior constitute a pattern of criminal conduct. Id. at 910. It is especially important to apply the test "where the extraneous conduct exists in "discrete, identifiable units" apart from the conduct for which the defendant is convicted." Id. at 911.
 
 
 8
 Although in most cases it will be preferable "for the district court to determine in the first instance" whether the test set forth in Hahn has been satisfied, Id. at 910, such a determination is not necessary in this instance. First, this case involves fraud and theft associated with stolen credit material. As this court has stated on similar facts, such conduct typically consists of many small acts which "cannot be readily broken into discrete, identifiable units that are meaningful for purposes of sentencing." Newbert, 952 F.2d at 284 (citing U.S.S.G. § 1B1.3, comment. (backg'd)). This is true here. Thus, a primary concern of Hahn--the government might prove one offense but expand it at sentencing with conduct that should have been charged separately--is not squarely implicated here.
 
 
 9
 Second, the specific similarity and regularity of the extraneous conduct to the underlying offense is overwhelmingly demonstrated in this case by physical evidence and common sense. Appellant was convicted of stealing mail from the vicinity of 629 Gayley Avenue. Among the materials found at his home were 176 pre-approved credit applications, many of which were addressed to people living in the vicinity of 629 Gayley Avenue. Notebooks with the names, addresses and credit information of various people, most of whom lived in the same area--some of whom were victims in this case--were also found. The search uncovered numerous charge cards issued in the names of people other than appellant. The account of one of these cards listed the address of 629 Gayley Avenue. The credit company that issued that card incurred nearly a $1,000 loss. Although the district court did not have the benefit of the Hahn decision at the time of sentencing, its application of 1B1.3(a)(2) was not clearly erroneous. See Newbert, 952 F.2d 281.[2]
 
 B. More Than Minimal Planning
 
 10
 Appellant contends the district court erred in considering the same information gleaned from the search of his residence to apply a two-level increase to the base offense level "for more than minimal planning" under § 2B1.1. The court of appeals reviews a two-level enhancement for "more than minimal planning" for clear error. United States v. Gregorio, 956 F.2d 341, 343 (1st Cir.1992).
 
 
 11
 Application Note No. 1(f) to U.S.S.G. § 1B1.1 provides that, in theft cases, "repeated instances of such thefts on several occasions would constitute more than minimal planning." In this case, the volume and wide assortment of stolen credit material found in appellant's residence demonstrates that appellant planned and executed a scheme to defraud issuers of credit. See United States v. Ruelas-Armeta, 684 F.Supp. 1048, 1052 (C.D.Cal.1988). In addition, it is undisputed that at the time of his arrest appellant possessed twenty-three letters containing credit material, each with a different address and addressee. Mohammed also kept in his car and briefcase written information containing the names, addresses and credit information of persons who resided in the area where appellant was observed going through the mail. There is thus a firm basis for the district court's two-level enhancement for more than minimal planning. Cf. United States v. Scroggins, 880 F.2d 1204, 1215 (11th Cir.1989), cert. denied, 494 U.S. 1083 (1990) (occurrence of 19 postal thefts demonstrates more than minimal planning).
 
 C. Acceptance of Responsibility
 
 12
 Mohammed contends the district court erroneously denied a two-level downward departure for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). "We review this essentially factual question for clear error." United States v. Martinez-Gonzales, 962 F.2d 874, 878 (9th Cir.1992). "Because the sentencing judge is 'in a unique position to evaluate a defendant's acceptance of responsibility,' his determination is entitled to 'great deference.' " Id. (quoting U.S.S.G. § 3E1.1, cmt. n. 5).
 
 
 13
 Section 3E1.1(a) provides that a defendant may receive a two-level reduction in his offense level if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Application Note No. 3 of Section 3E1.1 indicates that among the factors to consider is the "voluntary and truthful admission of involvement in the offense and related conduct." U.S.S.G. § 3E1.1 cmt. n. 1.[3] Where a district court finds that a defendant minimizes or misstates his or her involvement in the offense and related conduct in light of prior statements or other evidence, the sentencing judge may refuse to grant a two-level reduction for acceptance of responsibility. Martinez-Gonzales, 962 F.2d at 878; see also United States v. Ramos, 923 F.2d 1346, 1360 (9th Cir.1991).
 
 
 14
 Mohammed admitted the bare essentials necessary to support his conviction for obstruction of correspondence. However, in his interview with the probation officer, he asserted that his decision to take the mail came about because the opportunity presented itself; he was in the lobby of a fraternity building to use a pay phone and it occurred to him to take some mail in a basket near the pay phone to help him secure the credit information to obtain an apartment. The district court found that although Mohammed truthfully admitted that he took the mail, he in effect lied to the probation officer by attempting to minimize or isolate the crime of conviction in a manner inconsistent with the extraneous evidence.
 
 
 15
 We conclude that the withholding of the two-level reduction did not constitute clear error for two reasons. First, although Mohammed asserts that he took mail from a mail basket located in the lobby of a fraternity house at 629 Gayley Avenue, Count two of the indictment contains 18 addresses, none of which are 629 Gayley Avenue. Appellant has not explained the circumstances under which he obtained the letters in Count two of the indictment. Thus, he did not admit responsibility for "all facets of the crime" for which he was charged. See United States v. Oliveras, 905 F.2d 623, 629 (2nd Cir.1990) (per curiam). Stated another way, Mohammed's admission of the offense of conviction did not extend to reach "the actual charge and proof at trial." United States v. Rogers, 921 F.2d 975, 982 (10th Cir.), cert. denied, 111 S.Ct. 113 (1990).
 
 
 16
 Second, appellant asserted to the probation officer that the opportunity presented itself for him to take the letters to obtain credit information to secure an apartment. Mohammed need not have discussed the circumstances giving rise to the offense of conviction since it was not part of "the actual charge and proof at trial." Id. at 982. However, once he affirmatively characterized the circumstances of the crime, the district court was justified in determining that defendant's characterization understated those circumstances in light of related conduct evidence of wide-scale credit card fraud found at his home. For these reasons, we conclude that the district court's decision to withhold a two-level reduction for acceptance of responsibility was not without foundation. Cf. Oliveras, 905 F.2d at 630 (" 'Related conduct' could also encompass noncriminal conduct that is related to the pled count, for instance, if the defendant regularly associated with known drug dealers, but claimed merely to have stumbled unwittingly onto the drug scene, he could be found not to have accepted responsibility.").
 
 
 17
 Mohammed asserts that the district court put him between a rock and a hard place: he could either make self-incriminating admissions to the probation officer which could impact the state case pending against him, or limit his discussion and forfeit the two-level deduction. As the district court noted at several points during oral argument, in this circuit it is not proper to condition the § 3E1.1 reduction upon a defendant's waiver of the Fifth Amendment right against self-incrimination. See, e.g., United States v. Piper, 918 F.2d 839, 840 (9th Cir.1990) (per curiam); United States v. Watt, 910 F.2d 587, 591-93 (9th Cir.1990). Nevertheless, where a defendant affirmatively understates the circumstances of the crime in light of a preponderance of relevant conduct evidence, the district court may properly find defendant lied and withhold the 3E1.1 reduction without infringing upon the right to self-incrimination. Cf. United States v. Frierson, 945 F.2d 650, 654-55 (3rd Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1515 (1992) (§ 3E1.1 implicates Fifth Amendment protections, but defendant must invoke privilege and not simply lie in response to questioning regarding related conduct).
 
 D. Conclusion
 
 18
 We affirm the sentence. The district court properly considered relevant conduct evidence in setting appellant's offense level. The determination that Mohammed engaged in more than minimal planning is not clearly erroneous. While appellant accepted responsibility for the narrow offense of which he was charged, he did not accept responsibility for all facets of that crime and attempted to minimize his total involvement in the crime of conviction. Accordingly, the district court did not clearly err in withholding the two-level deduction for acceptance of responsibility.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The government's plea offer dated August 5, 1991 reads in pertinent part:
 Additionally, your client must stipulate that each of the items alleged in both counts in the indictment may be considered by the Court for sentencing purposes under the applicable sentencing guidelines, but not for the purpose of determining the base offense level under SG 2b1.1(b)(1).
 Appellant's confirming memo of August 9, 1991 states in relevant part:
 This will confirm our conversation wherein my client agreed to accept the government's plea offer, as outlined in your memo of August 5, 1991.
 Mr. Mohammed will enter a change of plea to count 2 of the indictment in exchange for the government's motion to dismiss count 1 at the time of sentencing.
 In addition, Mr. Mohammed will stipulate that the items alleged in both counts may be considered by the court for purposes of departure or for determining where within the applicable range to sentence but that only the items in count 2 will serve to determine the base offense level.
 
 
 [2]
 Appellant points to furniture allegedly purchased with one of the credit cards at issue nine months prior to his arrest, to suggest a fatal lack of temporal proximity. See Hahn, 960 F.2d at 910 n. 9. The police seized the evidence from appellant's home less than a week after the arrest. On these facts, such a gap in time with respect to the use of one of the credit cards does not preclude a finding that the purchase was part of the same course of conduct as the underlying conviction. See id. (citing United States v. Cousineau, 929 F.2d 64, 68 (2nd Cir.1991) ("Because of the continuous nature of the conduct and the circumstances of this case, we are not reluctant to consider relevant the conduct that occurred during the course of a two year period."))
 Mohammed also suggests the district court improperly found monetary loss arising out of the relevant conduct when that loss did not occur as a result of the offense of conviction. This argument misses the significance of Newbert. The Newbert court explained that Section 1B1.3(a)(2) and (a)(3) "specifically direct the consideration of all acts that were part of the same course of conduct or common scheme or plan as well as the harm that resulted from those acts." Newbert, 952 F.2d at 284 (emphasis added).
 
 
 [3]
 The court notes that the Sentencing Commission has recently adopted an amendment to § 3E1.1 and sent it to Congress. See 4 Fed.Sent.R. 343 (1992). The amended section does not apply here. See United States v. Robinson, 958 F.2d 268, 272 (9th Cir.1992)