**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Rex Alan LAWTON III, Defendant– Appellant.**

6. We do not address any of the public policy concerns that might impact the dischargeabil-

United States of America, Plaintiff–Appellee,

v.

**Margaret Marie Baheza, Defendant– Appellant.**

**Nos. 98–30267, 98–30283.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1999.

Filed Sept. 27, 1999.

ity of such obligations as alimony or child support.

Stephen R. Hormel, Federal Public Defenders, and Christina Gerrish, Student, Spokane, Washington, for defendant-appellant Lawton; Steven Mahaffy, Moscow, Idaho, for defendant-appellant Baheza.

James M. Peters, Assistant United States Attorney, and Lindsay Messick, Extern, Boise, Idaho, for the plaintiff-appellee.

Before: GOODWIN, REAVLEY,[1] and McKEOWN, Circuit Judges.

GOODWIN, Circuit Judge:

This case requires us to determine the proper purposes for which a judge under the Sentencing Guidelines can consider real offense conduct outside the scope of the charges included in a plea agreement. We recognize that the Guidelines are premised upon a delicate balance between real offense and charge offense sentencing. *See* USSG § 1A4(a), p.s. Maintaining this balance is particularly difficult, and particularly important, in the context of plea bargains.

Prosecutors suspected either Lawton or Baheza or both had abused their infant daughter, but they doubted they could prove at trial specifically who was responsible for the abuse. The government thus chose to charge the defendants with three lesser crimes and to accept a plea agreement in which Lawton and Baheza pled guilty to only one of the lesser crimes. The district court accepted the agreement but substantially ignored it in pronouncing its sentence. The court stated it was departing upward to sentence the couple under the guideline for aggravated assault, the suspected but uncharged real offense conduct.

We vacate the sentences and remand for sentencing under the guideline for the crime of conviction. The court deprived Lawton and Baheza of the benefit of their plea bargain. This was plain error, which was not waived by the failure of counsel to object at the time of sentencing. We appreciate the trial court's awareness of the cruelty of the underlying conduct, but that was not the crime for which the defendants pled guilty.

## I. Factual & Procedural Background

Lawton and Baheza are the unmarried parents of an infant girl born March 25, 1997. All three live on the Coeur d'Alene Indian reservation. Baheza is an enrolled member of the Coeur d'Alene tribe. On May 7, the defendants brought the six-week old baby to the emergency room of Kootenai Medical Center. Doctors determined the baby had numerous serious injuries including bruises, a torn frenulum, a fractured tibia, and a depressed fracture of her skull. The doctors believed the injuries were consistent with child abuse. The fractured tibia in particular was a "classic abuse X-ray finding." FBI agents interviewed the defendants after the hospital reported the suspected child battery. Lawton denied abusing the child and provided the FBI various explanations for the baby's injuries. The explanations were inconsistent with medical opinion. Baheza also gave answers that a jury could have found to be false. In a second interview, Lawton admitted that he had lied to the FBI. He then provided different, but equally dubious, explanations for the baby's injuries.

A week later, the child was again brought to the hospital with serious injuries. This time doctors determined she had multiple fractured ribs and a fractured

---

1. Honorable Thomas M. Reavley, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

clavicle. X-rays also revealed prior healed fractures in the baby's ribs and thigh. The next day, Baheza was interviewed by the FBI. She stated that some of the baby's injuries resulted from being accidentally dropped in the shower. She then admitted the story was not true. Soon afterwards, Lawton again admitted to the FBI that his earlier stories had been untrue. He provided new explanations for the baby's numerous injuries. These stories also contradicted medical opinion. In a third interview, Baheza provided the FBI with yet more explanations inconsistent with medical opinion.

In spite of the circumstantial evidence that one or both of the defendants had abused the infant, prosecutors doubted they could prove either parent's individual culpability beyond a reasonable doubt. Therefore, the defendants were each charged with two counts of making false statements to the FBI, 18 U.S.C. § 1001(a)(2), one count of accessory after the fact to assault, 18 U.S.C. § 3, and one count of misprision of the felony of assault, 18 U.S.C. § 4. The parties then reached a plea agreement. The defendants, with advice of counsel and in a Rule 11 hearing, entered their guilty pleas to the § 1001 counts; in exchange, the government dismissed the accessory and misprision charges. The plea agreement contained a recitation of most of the above facts. Though the defendants admitted in the plea agreement and at sentencing that some of the explanations they had provided the FBI were false, they continued to deny battering the child and did not admit even that their daughter had been abused.

The defendants' base offense level for false statements was 6. *See* USSG § 2F1.1(a). The court stated the evidence of serious child abuse took this case out of the heartland of false statement cases. The court concluded that an upward departure was encouraged by Guidelines

§§ 5K2.2 (conduct resulted in physical injury) and 5K2.8 (unusually heinous, cruel, or brutal conduct). The court decided to depart upward by applying the guideline for aggravated assault, § 2A2.2. Under § 2A2.2(a), the defendants' base offense level was 15. The court added 5 for the baby's very serious bodily injuries and subtracted 3 for acceptance of responsibility [2] resulting in an adjusted offense level of 17. Regrettably, trial counsel failed to object to the district court's substantial upward departure. Given their respective criminal history categories, the upward departure increased Lawton's sentencing range from 2–8 months to 30–37 months and Baheza's range from 0–6 months to 24–30 months. The district court sentenced Lawton to 30 months imprisonment and Baheza to 24 months imprisonment.

## II. Upward Departures Under USSG § 5K2.0 in the Context of Plea Agreements

Inasmuch as Lawton and Baheza argue the sentencing court was not permitted to upward depart at all in this case, their argument is nonsense. Courts have considerable discretion in Guidelines sentencing to depart upward or downward, and decision to do so is reviewed only for an abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). The use of an illegal factor, however, is by definition an abuse of discretion. *See id.; United States v. Sanchez–Rodriguez*, 161 F.3d 556, 559 (9th Cir.1998) (en banc). Our cases make clear that uncharged or dismissed conduct, in the context of a plea agreement, is an illegal basis for a departure. *See United States v. Castro–Cervantes*, 927 F.2d 1079 (9th Cir.1990); *United States v. Faulkner*, 952 F.2d 1066 (9th Cir.1991).[3] We conclude the district court here abused its discretion.

---

**2.** As the court noted, though the defendants accepted responsibility for lying to the FBI, they did not accept responsibility for assaulting their daughter.

**3.** We recognize that the circuits are split on this issue. *Compare United States v. Harris,*

70 F.3d 1001, 1004 (8th Cir.1995) (following *Castro–Cervantes* and *Faulkner) with United States v. Kim*, 896 F.2d 678, 684 (2d Cir. 1990); *United States v. Baird*, 109 F.3d 856 (3rd Cir.1997); *United States v. Barber*, 119 F.3d 276, 284 (4th Cir.1997); *United States v. Ashburn*, 38 F.3d 803, 807 (5th Cir.1994);

In *Castro–Cervantes*, the defendant pled guilty to two counts of robbery and admitted committing two more uncharged robberies in the plea agreement. The government agreed to dismiss five robbery counts. At sentencing, the district court departed upward to account for the five dismissed robberies. We reversed and remanded the sentence, holding that the district court's upward departure violated USSG § 6B1.2(a). *See Castro–Cervantes*, 927 F.2d at 1080–82. Similarly, in *Faulkner*, the defendant pled guilty to five robbery counts in exchange for the government dismissing three robbery counts and agreeing not to charge five other robberies. When the court departed upward to account for the eight suspected robberies outside the plea agreement, we again reversed and remanded the sentence. *See Faulkner*, 952 F.2d at 1068–71.

■ Our decisions in *Castro–Cervantes* and *Faulkner* are based on the plain language of §§ 5K2.0 and 6B1.2(a) of the Guidelines. Section 5K2.0 authorizes upward departures only for " 'aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission....' " USSG § 5K2.0 (*quoting* 18 U.S.C. § 3553(b)). Upward departures are intended to account only for factors that make a case atypical. *See Koon*, 518 U.S. at 94, 116 S.Ct. 2035. In the absence of a plea agreement, suspected child abuse might indeed mark an atypical case of false statements. In the context of a plea bargain, however, dismissed charges or uncharged conduct are a typical, even routine, occurrence. Not surprisingly, the Sentencing Guidelines expressly take such conduct into consideration. A court may accept a plea agreement only if it determines "that the remaining charges adequately reflect the seriousness of the actual offense behavior." USSG § 6B1.2(a). If a district court believes the charges included in a plea agreement are insufficient, § 6B1.2(a) requires the court to reject the plea agreement. This procedure adequately takes into consideration conduct dismissed or not charged as part of a plea bargain. There is no need for departures under § 5K2.0.

■ The language of § 1B1.4 does not change our analysis. *See Faulkner*, 952 F.2d at 1070–71. That section does provide that when imposing a departure "the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." USSG § 1B1.4. The commentary explains, however, that the provision does *not* expand the information which can be considered in imposing upward departures. Only "information that does not enter into the determination of the applicable guideline sentencing range may be considered in determining" departures. *Id.*, comment. (backg'd.). Conduct dismissed or uncharged as part of a plea bargain does enter into the determination of the guidelines range through § 6B1.2(a). The guidelines range is only based upon the charges included in a plea agreement if the plea agreement is approved by the district court. The plea agreement is only approved if the district court first determines the agreement reflects the seriousness of the dismissed or uncharged conduct.

■ Two basic canons of statutory construction provide further support for our conclusion that conduct dismissed or uncharged as part of a plea bargain may not be the basis for an upward departure. First, § 6B1.2(a) explicitly provides that such conduct may be considered "Relevant Conduct" under § 1B1.3. We find it significant that the Sentencing Commission chose not to include a similar provision regarding upward departures under § 1B1.4. *See Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1312–13 (9th Cir. 1992) (explaining interpretive principle of "expressio unius est exclusio alterius").

*United States v. Zamarripa*, 905 F.2d 337, 341    (10th Cir.1990).

Second, if a district court may sentence a defendant for the real offense conduct through the guise of a § 5K2.0 upward departure, regardless of the plea bargain, then the determination required by § 6B1.2(a) is pointless. We will not ascribe to the Sentencing Commission the intent to render a section of the Guidelines mere surplusage. *See United States v. Fiorillo*, 186 F.3d 1136, 1152–53 (9th Cir. 1999) ("One provision of a statute should not be interpreted in a manner that renders other sections of the same statute 'inconsistent, meaningless or superfluous.'"); *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 834 (9th Cir.1996) ("We have long followed the principle that [s]tatutes should not be construed to make surplusage of any provision.") (internal quotation marks omitted).

■ Not only are such upward departures unauthorized, but they are also "patently unfair" because they hold a defendant to his end of the bargain, the guilty plea, "while simultaneously denying him the benefits promised him from the bargain." *Faulkner*, 952 F.2d at 1070. Section 6B1.2(a)'s requirement that the court accept or reject plea bargains *in toto* strikes the correct balance between the court's need to respect the parties' evaluation of the risks of trial with its need to monitor the contents of bargains. *Cf. Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998) (When a district court approves a class action settlement under FRCP 23, "[t]he settlement must stand or fall in its entirety."). Courts may not redraft plea agreements to suit their own perception of the equities. They should instead reject faulty agreements, sending the parties either back to the bargaining table or to trial.

We have repeatedly expressed our concern that if judges begin withholding "'the benefits of the plea bargain to which defendants are entitled,'" the plea bargaining process might break down and "'the consequences for both the criminal and civil justice system might well be disastrous.'" *Faulkner*, 952 F.2d at 1070

(quoting *United States v. Enriquez–Munoz*, 906 F.2d 1356, 1359 (9th Cir.1990)). Courts have long recognized that settlement agreements are motivated primarily by the desire to avoid the risks of trial. *See Rude v. Westcott*, 130 U.S. 152, 164, 9 S.Ct. 463, 32 L.Ed. 888 (1889) ("The avoidance of the risk and expense of litigation will always be a potential motive for a settlement."). In departing upward to account for uncharged or dismissed conduct, a district court abrogates the parties' ability to control the risks of trial through agreement.

In this case, for example, the government admits it probably could not meet its burden of proof on the assault charges. The decision to accept the plea bargain implies the government may have also doubted its ability to prove the accessory and misprision charges. Rather than risk acquittals, prosecutors chose to accept guilty pleas on the false statement charges, the least serious charged offense. *Compare* USSG § 2F1.1 *with* §§ 2X3.1 and 2X4.1. The defendants agreed in order to avoid the risk of conviction on more serious charges. While the government avoided acquittals, the parties were unable to control through agreement the risks that Lawton and Baheza would face from trial. They were sentenced just as if they had been convicted of aggravated assault. Without the ability to control these risks, defendants have no incentive to settle. We doubt Lawton and Baheza would have agreed to any plea bargain if they had known the district court could, nevertheless, sentence them for aggravated assault.

We wish to emphasize the narrowness of our holding. There is no blanket prohibition on upward departures when sentencing under a plea agreement. In fact, in both *Faulkner* and *Castro–Cervantes*, we considered the merits of upward departures for conduct related to the offenses of conviction. *See Faulkner*, 952 F.2d at 1073 (considering departure for possession of toy gun); *Castro–Cervantes*, 927 F.2d at 1081 (approving departure for sophistica-

tion of robbery). The Guidelines prohibit only upward departures which sentence a defendant as if he had pled guilty to uncharged or dismissed conduct. In this case, the Guidelines might encourage a reasonable departure under § 2F1.1, comment. (n. 11(b)), but the sentencing court must bear in mind that the defendants are not being sentenced for the uncharged assault but for the gravity of the false statements. There are, moreover, other phases of the sentencing calculation in which a district court may consider uncharged or dismissed conduct. *See* USSG § 1B1.4, comment. (backg'd.) (in selecting a sentence within an applicable range); *United States v. Fine,* 975 F.2d 596, 602 (9th Cir.1992) (en banc) (as relevant conduct under § 1B1.3); *infra* Part v. (same); *United States v. Smith,* 991 F.2d 1468, 1470–73 (9th Cir.1993) (in calculating criminal history category enhancements under § 4A1.1(d)–(e)).

We hold that in accepting, under § 6B1.2(a), Lawton and Baheza's agreement to plead guilty only to making false statements, the district court "implicitly f[ound] it fair." *Faulkner,* 952 F.2d at 1070. The district court was not then authorized to depart upward under § 5K2.0 by applying the guideline for aggravated assault, to account for the suspected real offense conduct. If the district court felt the plea bargain did not reflect the seriousness of Lawton and Baheza's conduct, the correct remedy under the Guidelines was rejection of the plea agreement, not an upward departure. *See Castro–Cervantes,* 927 F.2d at 1082.

The Presentence Report contributed to the confusion by recommending that the court consider an upward departure "for a vulnerable victim," apparently forgetting that the victim of the crime to which the defendants pled guilty was the FBI. The victim of the crime being *investigated* was the six weeks old baby girl.

### III.   Plain Error

■   Because trial counsel failed to object to the upward departure, the plain error standard applies. The sentence should be reversed only if the error (1) was "clear or obvious", (2) affected substantial rights, and (3) seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Randall,* 162 F.3d 557, 561 (9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1480, 143 L.Ed.2d 563 (1999). As discussed above, the upward departure was in violation of well-established Ninth Circuit precedent, so the error was clear.

■   The government argues that any error did not affect the defendants' substantial rights or the fairness of the proceedings because the district court would have applied the aggravated assault guideline even if it had followed *Castro–Cervantes* and *Faulkner.* The government cites the procedures for selecting a guideline under § 1B1.2(a) and the definition of relevant conduct under § 1B1.3. After analyzing the applicability of §§ 1B1.2(a) and 1B1.3, we disagree.

### IV.   "Plea Stipulations" Under USSG § 1B1.2(a)

The government acknowledges that a sentencing judge must consider only conduct included in the plea agreement when selecting a guideline under § 1B1.2. *Cf. United States v. Crawford,* 185 F.3d 1024 (9th Cir.1999). The government contends, however, that the district court was required to use the aggravated assault guideline because of the stipulations in the plea agreements. If more serious conduct is "specifically established" by stipulations in a plea, then § 1B1.2(a) does require the district court to consider that conduct in selecting a guideline. *See United States v. Saldana,* 12 F.3d 160 (9th Cir.1993) (distinguishing *Castro–Cervantes* and *Faulkner* and requiring district court to consider under § 1B1.2(a) more serious conduct specifically established by plea agreement). The problem with the government's argument is that the facts stipulated in the plea agreements do not specifically establish aggravated assault.

They establish only mendacity and a failed cover-up.

█ The interpretation of stipulations is, like the interpretation of contracts, an issue of law reviewed de novo. *See Braxton v. United States*, 500 U.S. 344, 350, 111 S.Ct. 1854, 114 L.Ed.2d 385 (1991). In *Braxton*, the Supreme Court held that a stipulation which "supports two reasonable readings," one of which is inconsistent with guilt, is not "a stipulation that 'specifically establishes'" a crime under § 1B1.2(a). *Id.* at 351, 111 S.Ct. 1854. In his plea, Braxton admitted to shooting at the door as U.S. Marshals were entering his apartment. The district court determined the admission established attempted murder and applied the guideline for murder. A unanimous Supreme Court, per Justice Scalia, reversed the sentence. Because the plea stipulation was as consistent with an intent to frighten as an intent to kill, attempted murder had not been "specifically established." *See id.* at 350–51, 111 S.Ct. 1854.

Nothing in these plea agreements specifically establishes that either defendant committed aggravated assault or even misprision of aggravated assault. The government tries to claim that aggravated assault is established because Baheza admitted to punching her daughter while acting out a dream and Lawton admitted to recklessly jumping on a sofa on which the child lay. Even a cursory reading of the plea agreement makes clear that it does not establish these facts; it only establishes that the defendants provided these explanations to the FBI. They did not stipulate to the truth but the falsehood of the stories. *Lawton and Baheza pled guilty to lying to the FBI.* The doctors, the court, the FBI, and the prosecutors all believed the stories to be untrue. The defendants did not even admit that their child had been abused. Suspected lies cannot "specifically establish" more serious conduct justifying a three or four-fold increase in a sentence.

The district court could not have used the aggravated assault guideline under the plea stipulations prong of § 1B1.2. The defendants' substantial rights and the fairness of the proceeding were affected by the unwarranted upward departure.

### V. "Relevant Conduct" Under USSG § 1B1.3.

█ The government finally argues that the district court could have imposed the same sentence by considering the uncharged and dismissed conduct under § 1B1.3. The district court may consider dismissed, uncharged, or even acquitted conduct as relevant conduct under USSG § 1B1.3. *See* USSG § 6B1.2(a) (providing plea agreements "shall not preclude" dismissed or uncharged conduct "from being considered under the provisions of § 1B1.3"); *United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *United States v. Fine*, 975 F.2d 596, 602 (9th Cir.1992) (en banc). Section 1B1.3 is not a carte blanche for the district court to consider whatever conduct it pleases, however. Before the court may consider the allegations of child abuse relevant conduct in its sentencing, it must determine that that conduct is relevant under the definition in § 1B1.3(a)(1).[4] Even if the district court finds the child abuse to be relevant conduct, still the court may not use the guideline for aggravated assault. Relevant conduct may not be used to select a guideline under § 1B1.2. *See Crawford*, 185 F.3d at 1028 (9th Cir. 1999). Relevant conduct may be considered only in the imposition of guidelines enhancements and adjustments, once a guideline has been selected. *See* USSG § 1B1.3(a). In this case, for example, the enhancement in § 2F1.1(b)(6)(A) might apply if the offense involved "the conscious or reckless risk of serious bodily injury."

That the uncharged conduct may be considered in imposing enhancements and adjustments does not defeat defendants'

---

4. Section 1B1.3(a)(2) is not relevant since the aggravated assault is not grouped together for sentencing purposes with the false statements under § 3D1.2(d).

claims of prejudice. It is not at all clear that on remand the district court will again impose an offense level of 17 using the guideline for false statements, § 2F1.1, and applying the appropriate enhancements and adjustments.

## VI. Conclusion

No alternative sentencing rubric would have authorized the district judge to use the aggravated assault guideline. We cannot be certain the application of the guideline for false statements and the appropriate enhancements, adjustments, and departures would have resulted in the same offense level. We conclude the erroneous upward departure affected Lawton and Baheza's substantial rights and the fairness of the proceedings. We must vacate and remand the sentence in light of this plain error.

On remand, the suspected real offense conduct, i.e., the uncharged and dismissed conduct, may not be considered in selecting a guideline under § 1B1.2. The court must apply the guideline suggested by the plea agreement. The district court may consider any conduct within the definition in § 1B1.3(a) in imposing enhancements and adjustments. Upward departures may not be used to punish the defendants for uncharged or dismissed conduct, but there is no blanket prohibition on upward departures. The court is, of course, free to select any sentence within an appropriate guideline range. *See* § 1B1.4. Finally, we note that if any disputed fact has a "disproportionate impact" on the sentence, the fact must be established by clear and convincing evidence. *See United States v. Hopper*, 177 F.3d 824, 833 (9th Cir.1999).

VACATED AND REMANDED.