**UNITED STATES of America,
Plaintiff–Appellant,**

**v.**

**Jesse SALDANA, Defendant–Appellee.**

No. 93–10050.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 1, 1993.*

Decided Dec. 20, 1993.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Karon V. Johnson, Asst. U.S. Atty., Agana, Guam, for plaintiff-appellant.

Howard Trapp, Howard Trapp Inc., Agana, Guam, for defendant-appellee.

Before: POOLE, WIGGINS, and NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

## OVERVIEW

The United States appeals the five-year probation sentence for Jesse Saldana who pled guilty to three cocaine charges and stipulated to facts in the plea agreement which established food stamp fraud offenses. The Government objects to the district court's disregard of the food stamp fraud offenses in the calculation of the base offense level under the sentencing guidelines. We vacate and remand for resentencing.

## FACTS AND PROCEDURAL HISTORY

On September 18, 1992, Jesse Saldana was indicted on twelve counts of food stamp fraud in violation of 7 U.S.C. § 2024(b)(1) and three counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1). Pursuant to Fed. R.Crim.P. 11(e)(1)(B), the Government and Saldana entered into a plea agreement. The plea agreement provided that Saldana would plead guilty to the three cocaine distribution charges and in exchange, the Government agreed to move to dismiss the twelve food stamp fraud charges. The plea agreement also required Saldana to stipulate to certain facts "for purposes of the sentencing guidelines." In the plea agreement, Saldana stipulated, among other facts, that:

d. On November 9, 1990, defendant met an undercover officer, Special Agent Roman Buyson of the U.S. Customs Service, at the Pizza Hut in Dededo. At that time defendant gave Agent Buyson a quantity of cocaine, which was subsequently tested and found to weight [sic] 6.2 grams of cocaine. Defendant Saldana had earlier purchased food stamps from Agent Buyson, and owned [sic] some $2,000 cash. Defendant Saldana gave Agent Buyson the cocaine in lieu of cash.

f. On December 15, 1988, defendant again met Agent Buyson, this time at the McDonald's in Tamuning. During this meeting defendant gave Agent Buyson a quantity of cocaine, which was subsequently tested and found to weigh 5.83 grams. This cocaine was delivered in exchange for $3,000 worth of U.S. food stamps.

g. Between March 31, 1988 and December 15, 1988 defendant acquired United States Department of Agriculture food stamps, to which he was not legally entitled, by unlawfully buying them. The total face value of the food stamps was $48,555.

Based on the three cocaine counts, the presentence report (PSR) calculated a base offense level of twelve. The PSR then reduced the base offense level by two for the defendant's acceptance of responsibility for a total offense level of ten. The Government challenged the PSR for disregarding the food stamp counts in calculating the base offense level. According to the Government, U.S.S.G. § 1B1.2(c) requires that the food stamp counts be considered as convictions in calculating the offense level. The district court held that it had the discretion to decide whether it would take into consideration the stipulated food stamp counts in determining the offense level. However, it declined to do so.

## DISCUSSION

### I.

The Government contends that § 1B1.2 is mandatory if a plea agreement

establishes the commission of other offenses. The district court would not have the discretion it exercised in this case if the Government is correct.

The language contained in § 1B1.2(c) does not, on its face, leave room for discretion in its application:

A plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s).

The commentary, while it does not use the word "shall," does not imply that the command of subsection (c) is discretionary: "[T]he guidelines are to be applied as if the defendant had been convicted of an additional count for each of the offenses stipulated." § 1B1.2, comment. (n. 4).

No cases in this circuit specifically address the issue of whether § 1B1.2(c) is mandatory. However, in *United States v. Bos,* 917 F.2d 1178 (9th Cir.1990), we affirmed a sentence imposed under § 1B1.2(a) [1] which directs the district court to determine the offense guideline section based on the more serious offense rather than the offense of conviction if the stipulated facts in the plea agreement establish the commission of a more serious offense. *Id.* at 1180. In *Bos,* the district court determined that the plea agreement established arson, and thus sentenced Bos using arson to calculate the offense level, rather than the mail fraud conviction, which was the offense of conviction. *Id.* Neither the district court nor this court implied that the district court had discretion to ignore the command of the guidelines.

In *United States v. Arias–Granados,* 941 F.2d 996 (9th Cir.1991), the defendants had previously been deported following a felony conviction. *Id.* at 997. They were found in the United States and charged with violating 8 U.S.C. § 1326(b)(1), reentry following deportation for a felony conviction. *Id.* In a plea agreement, they agreed to plead guilty to simple reentry after deportation under 8 U.S.C. § 1326(a), which carried only a two-year maximum sentence instead of a five-year maximum under § 1326(b)(1). On appeal, the defendants challenged the four level increase in their offense level pursuant to § 2L1.2.[2] *Id.* In upholding the sentence imposed, we noted the structure of § 1B1.2 and the direction it gives to the sentencing court in applying the guidelines. *Id.* at 998. There is no indication in either *Bos* or *Arias–Granados* that the language of § 1B1.2 is not intended to be mandatory in its direction to the district court in regarding how it should select the proper offense guideline section and in how it should treat other offenses included within a plea agreement.

■ Nothing in the guidelines, the commentary, or prior decisions of this court support a conclusion that a district court is free to ignore the command of § 1B1.2(c) requiring it to consider additional offenses established by a plea agreement. Therefore, the district court was in error when it did not consider the other offenses established by the plea agreement.

■ Saldana argues that the sentence can be upheld because the food stamp offenses were not "specifically established" by the plea agreement. Saldana relies on *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), in which the

---

1. Section 1B1.2(a) provides:

   Determine the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction (*i.e.,* the offense conduct charged in the count of the indictment or information of which the defendant was convicted). *Provided,* however, in the case of a plea agreement (written or made orally on the record) containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section in Chapter Two most applicable to the stipulated offense.

   U.S.S.G. § 1B1.2

2. Section 2L1.2, titled "Unlawfully Entering or Remaining in the United States," provides:

   (a) Base Offense Level: 8
   (b) Specific Offense Characteristics
      If more than one applies, use the greater:
      (1) If the defendant previously was deported after a conviction for a felony, other than a felony involving violation of the immigration laws, increase by 4 levels.
      (2) If the defendant previously was deported after a conviction for an aggravated felony, increase by 16 levels.

   U.S.S.G. § 2L1.2

Supreme Court held that conviction of food stamp fraud requires that the Government "prove that the defendant knew that his acquisition or possession of food stamps was in a manner unauthorized by statute or regulations." *Id.* at 433, 105 S.Ct. at 2092. The plea agreement here stated that Saldana acquired food stamps "to which he was not legally entitled, by unlawfully buying them." The statement that he was not legally entitled to the stamps, coupled with the further statement that his purchase was unlawful, fully meets the requirements of *Liparota.* Because Saldana's possession of the food stamps was not unlawful unless he knew that he had acquired them in an unauthorized manner and that he was not entitled to them, he admitted all of the elements of the crime in the plea agreement.

## II.

■ Saldana next argues that because the food stamp charges were dismissed, the district court properly disregarded them under *United States v. Castro–Cervantes,* 927 F.2d 1079 (9th Cir.1990), and *United States v. Faulkner,* 952 F.2d 1066 (9th Cir.1991). His basic contention is that it is unfair to dismiss certain charges as required by a plea bargain and then base the sentence on those same charges.

However, the sentence was not based on the dismissed charges *per se,* but on the facts stipulated in the plea agreement which established the commission of other offenses. *Castro–Cervantes* and *Faulkner* involved the use of dismissed robbery charges as the basis for an upward departure (*Castro–Cervantes* ), or the use of dismissed charges and offenses which the Government agreed not to charge as the basis for an upward departure (*Faulkner* ). Nothing in those cases pre-

cludes the consideration of offenses established in the plea agreement in order to set the offense level pursuant to § 1B1.2. In fact, in *Castro–Cervantes,* two uncharged robberies established in the plea agreement were counted as convictions for purposes of establishing the base offense level. 927 F.2d at 1081.

Finally, Saldana argues that § 1B1.2(c) is in conflict with § 6B1.2(a).[3] A conflict was noted in both *Castro–Cervantes* and *Faulkner* between §§ 6B1.2(a) and 1B1.4, which empowers the sentencing court to "consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."

The tension or conflict between a section directing the district court to consider other offenses established by the plea agreement and one directing the district court to accept a plea agreement if it determines the remaining charges adequately reflect the "seriousness of the actual offense behavior," is not as apparent as Saldana argues. The same plea agreement that requires the Government to dismiss the food stamp counts also contains facts stipulated to "for purposes of the Sentencing Guidelines." Those facts established the commission of other criminal offenses which the guidelines say must be treated as convictions. A sentence under the guidelines resulted from the application of those guidelines. This is distinguishable from the situation in *Castro–Cervantes* and *Faulkner* where the dismissed counts were used to depart upward from the guideline sentences.

The situation here is more analogous to that in *United States v. Fine,* 975 F.2d 596 (9th Cir.1992), where the monetary losses in dismissed counts were used in setting the

---

**3.** Section 6B1.2(a) provides:

In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges [Rule 11(e)(1)(A)], the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines.

*Provided,* that a plea agreement that includes the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted.

U.S.S.G. § 6B1.2

offense level, even though, unlike Saldana, Fine did not stipulate to facts establishing the other offenses. As we said in *Fine*, "[a] person who pleads guilty under sentencing guidelines may be entitled to expect that he will receive the guidelines sentence." *Id.* at 602. A sentence using the facts Saldana stipulated to in setting the offense level would be such a sentence, while a sentence disregarding the stipulated facts is not such a sentence.

### CONCLUSION

For the foregoing reasons, we VACATE the sentence and REMAND to the district court for resentencing under § 1B1.2(c). The food stamp fraud offenses should be taken into consideration in calculation of the base offense level.