**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

NAMIR MALIK ALI GREENE,

*Defendant - Appellant.*

No. 23-4097

D.C. No.
2:23-cr-00209-
SPG-1

OPINION

Appeal from the United States District Court
for the Central District of California
Sherilyn Peace Garnett, District Judge, Presiding

Argued and Submitted March 6, 2025
Pasadena, California

Filed May 23, 2025

Before: Richard C. Tallman, Sandra S. Ikuta, and Morgan
B. Christen, Circuit Judges.

Opinion by Judge Christen

# SUMMARY[*]

## Criminal Law

The panel reversed the district court's use of a "pseudo-count" of carjacking to calculate Namir Malik Ali Greene's offense level at sentencing in a case in which Greene pleaded guilty to one count of Hobbs Act robbery.

When entering his guilty plea to the Hobbs Act robbery count, Greene also stipulated to certain facts including that, on April 15, 2023, "using the BB-gun to intimidate a vehicle owner," he stole a 2010 Honda Accord. In the presentence report, the probation officer treated the April 15 car theft as a carjacking pseudo-count, and calculated an adjusted offense level of 26 for that offense: a base offense level of 20, a four-level enhancement for the use of a dangerous weapon during the car theft, and an automatic two-level enhancement because the "offense involved carjacking." USSG § 2B3.1(a), (b)(2)(D), (b)(5). The probation officer applied the highest adjusted offense level to calculate Greene's final adjusted offense level: 26 for the carjacking pseudo-count. USSG § 3D1.4.

The district court adopted and largely followed the presentence report's calculation of Greene's total offense level, including the use of carjacking as "the greater of the adjusted offense levels."

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Because Greene did not object to the district court's reliance on carjacking to calculate his offense level, the panel reviewed for plain error.

The panel agreed with Greene that the district court erred by using the carjacking pseudo-count to calculate his offense level because the elements of federal carjacking, 18 U.S.C. § 2119, were not specifically established by his plea agreement. In particular, the stipulated facts do not specifically establish that Greene acted with the "intent to cause death or serious bodily harm," which is the mens rea required for federal carjacking.

The panel held that this error was plain under Supreme Court precedent and affected Greene's substantial rights. The panel exercised its discretion to correct the error because the miscalculated base offense level seriously affects the fairness, integrity, or public reputation of judicial proceedings. The panel remanded for resentencing on an open record.

**COUNSEL**

Jena A. MacCabe (argued), Assistant United States Attorney, Violent & Organized Crime Section; David R. Friedman, Assistant United States Attorney; Mack E. Jenkins, Assistant United States Attorney, Chief, Criminal Division; E. Martin Estrada, United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; Jeffrey M. Chemerinsky, Kendall Brill & Kelly LLP, Los Angeles, California; for Plaintiff-Appellee.

Alexander Botoman (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Federal Public Defender; Federal Public Defender's Office, Los Angeles, California; for Defendant-Appellant.

**OPINION**

CHRISTEN, Circuit Judge:

Namir Malik Ali Greene challenges his 120-month sentence for interference with commerce by robbery (Hobbs Act robbery). 18 U.S.C. § 1951(a). He argues that the district court erred by basing his Sentencing Guidelines range on a "pseudo-count" of carjacking, 18 U.S.C. § 2119, because the elements of federal carjacking were not specifically established by his plea agreement. U.S. Sent'g Guidelines Manual (USSG) § 1B1.2(c) (U.S. Sent'g Comm'n 2023). We agree. Applying plain error review, we reverse and remand for resentencing on an open record.

**I**

**A**

Despite his promising high school academic performance and strong family support, Greene committed a series of convenience store and gas station robberies during a three-week period in March and April 2023. The government alleged that the robberies followed the same general pattern: Greene pointed a BB gun that "appeared to be a black semi-automatic handgun" at a store clerk, threatened the clerk, and demanded money. Greene stole between $100 and $2,000 from each location. In the same

period, Greene also stole three cars: two by using the BB gun to intimidate the vehicles' owners and one by stealing the keys. Greene never fired the BB gun or otherwise used violence.

Eventually, police spotted Greene in one of the stolen vehicles, and after a high-speed pursuit, they arrested him. Greene was charged with nine counts of interference with commerce by robbery pursuant to 18 U.S.C. § 1951(a) and one count of carjacking pursuant to 18 U.S.C. § 2119.

**B**

Greene entered a guilty plea to one count of Hobbs Act robbery; specifically, he admitted to robbing a Shell gas station on April 4, 2023 using a BB gun. Greene also stipulated to facts establishing seven additional Hobbs Act robberies in which he used a BB gun to "control the store employees" at several other gas stations and convenience stores. Finally, Greene stipulated that on April 15, 2023, "using the BB-gun to intimidate a vehicle owner," he stole a 2010 Honda Accord.

In the plea agreement, the government and Greene stipulated to the following applicable Sentencing Guidelines: (1) a base offense level of 20 pursuant to USSG § 2B3.1(a); (2) a four-level enhancement for the use of a dangerous weapon pursuant to USSG § 2B3.1(b)(2)(D); and (3) a five-level enhancement for multiple counts pursuant to USSG § 3D1.4.

**C**

In the presentence report, the probation officer calculated an adjusted offense level for the Hobbs Act robbery crime of conviction of 24: a base offense level of 20 and a four-level enhancement for the use of a dangerous weapon during the

April 4 gas station robbery. USSG § 2B3.1(a), (b)(2)(D). The seven additional acts of Hobbs Act robbery to which Greene stipulated carried the same adjusted offense level. The parties refer to these as "pseudo-counts" of Hobbs Act robbery because Greene was not convicted of them.

The probation officer treated the April 15 car theft that Greene admitted to as a carjacking pseudo-count, and calculated an adjusted offense level of 26 for that offense: a base offense level of 20, a four-level enhancement for the use of a dangerous weapon during the car theft, and an automatic two-level enhancement because the "offense involved carjacking." USSG § 2B3.1(a), (b)(2)(D), (b)(5). The probation officer applied the highest adjusted offense level to calculate Greene's final adjusted offense level: 26 for the carjacking pseudo-count. USSG § 3D1.4. From there, the probation officer added a five-level adjustment for multiple counts that the parties stipulated to in the plea agreement, USSG § 3D1.4, and a three-level reduction for Greene's acceptance of responsibility, USSG § 3E1.1. The resulting total offense level was 28. The probation officer determined that Greene was in criminal history category II, and calculated the Guidelines range as 87–108 months.

In his sentencing brief, Greene did not object to the presentence report's use of a carjacking pseudo-count to calculate his offense level, but he argued for a four-level downward adjustment and a sentence of 70 months based on his personal history, support network, and young age at the time of the crimes. Greene's sentencing memorandum stressed that he graduated from a charter high school with honors and was a star on the football team. In the years leading up to the crimes, Greene studied for an associate's degree and worked successfully as a day trader. He sent large sums to his family to support them while his day

trading lasted, but the trading was conducted through a multi-level marketing scheme and the business eventually collapsed.   In the aftermath, Greene struggled to find employment and he moved back into his mother's home, which he shared with his mother and younger sisters. Shortly thereafter, the family was evicted and began living in a car.  Greene felt like "he had failed" his family.  Faced with the pressure of these unfortunate circumstances, he committed a string of criminal offenses in a short period of time.  Greene's family, friends, and community submitted letters on his behalf that described his positive qualities and expressed their commitment to support him during his incarceration and rehabilitation.  At his sentencing hearing, Greene accepted "full responsibility," expressed remorse, and "sincerely apologize[d]" to the victims.

The district court adopted and largely followed the presentence report's calculation of Greene's total offense level.  The court used carjacking as "the greater of the adjusted offense levels," with no objection from Greene, made the other adjustments described above for multiple counts and acceptance of responsibility, and granted the government's request for an additional two-level enhancement for "reckless endangerment during flight" pursuant to USSG § 3C1.2.  The court settled on a total offense level of 30.  With a criminal history category of II, the district court calculated Greene's Guidelines range as 108–135 months.   The government recommended 108 months consistent with its agreement to recommend a sentence at the low end of the Guidelines range.

When imposing Greene's sentence, the district court noted that the sentence could be "lower or higher" than the sentences recommended by the government, Greene, and probation.  The district court stated that it was "impacted by

the number of letters" it had received in support of Greene, and noted its disappointment that Greene committed these crimes rather than turning to his support network. The court emphasized the severity and extent of Greene's crimes, which, by the government's estimate, included at least twenty uncharged robberies, and the emotional harm suffered by Greene's victims.

Balancing Greene's remorse, young age, and prospects for rehabilitation with the severity and impact of his crimes, the court imposed a sentence of 120 months, in the middle of the calculated range. The court deemed the sentence "fair" in light of Greene's "character and characteristics." The court also ordered restitution in the total amount of $17,084.94 and a three-year term of supervised release.

Greene timely appealed his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand for resentencing.

## II

Greene argues on appeal that the district court erred when it used the carjacking pseudo-count to calculate his offense level because the plea agreement did not establish all elements of federal carjacking. *See* 18 U.S.C. § 2119; USSG § 1B1.2(c).[1] Greene concedes that he failed to object to the district court's reliance on carjacking to calculate his offense level. When a defendant fails to raise an objection before

---

[1] Greene also challenges his sentence as substantively unreasonable. Because we agree that the district court erred by calculating Greene's Guidelines range, we do not reach the substantive reasonableness of the sentence.

the district court, we review for plain error.[2]  Fed. R. Crim. P. 52(b).  "Plain error is found where there is (1) error, (2) that was clear or obvious, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings."  *United States v. Holmes*, 129 F.4th 636, 662 (9th Cir. 2025) (citation and quotation marks omitted); *United States v. Olano*, 507 U.S. 725, 732–35 (1993).

## III

## A

The first two prongs of the plain error test are satisfied because the plea agreement did not specifically establish all elements of federal carjacking; in particular, the stipulated facts do not specifically establish that Greene acted with the "intent to cause death or serious bodily harm," which is the mens rea required for federal carjacking.  18 U.S.C. § 2119; USSG § 1B1.2(c).  This error was plain under Supreme Court precedent.  *Braxton v. United States*, 500 U.S. 344, 350–51 (1991); *see Olano*, 507 U.S. at 734.

When calculating a Sentencing Guidelines range, courts must start with the crime of conviction.  USSG § 1B1.2(a).  Sentencing Guideline § 1B1.2(c) provides a limited exception to this general rule: "A plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been

---

[2] Greene argues that we should apply an exception to plain error review when an issue presents a pure question of law.  We decline to exercise our discretion to apply this exception and note the result of this appeal would be the same under either standard of review.  *United States v. Thompson*, 127 F.4th 1204, 1210 n.4 (9th Cir. 2025); *United States v. Begay*, 33 F.4th 1081, 1091 n.3 (9th Cir. 2022) (en banc).

convicted of additional count(s) charging those offense(s)." When a plea agreement includes a defendant's stipulation to the commission of multiple offenses, the offense level used to calculate the defendant's sentence is the "highest offense level of the counts." USSG § 3D1.3(a).

The base offense level for Hobbs Act robbery is 20. USSG § 2B3.1(a). The base offense level for a § 2119 carjacking offense is also 20, but a 2-level enhancement always applies because, by definition, the "offense involved carjacking." USSG § 2B3.1(a), (b)(5). Therefore, the base offense level for § 2119 carjacking is functionally 22.

A sentencing court "must consider only conduct included in the plea agreement" when selecting a Guideline under § 1B1.2(a). *United States v. Lawton*, 193 F.3d 1087, 1093 (9th Cir. 1999), *superseded in part on other grounds,* USSG App. C. para. 604 (2000), *as recognized in United States v. Barragan-Espinoza*, 350 F.3d 978, 983 (9th Cir. 2003). That conduct must "specifically establish[]" all elements of the base offense. USSG § 1B1.2(c); *United States v. Saldana*, 12 F.3d 160, 162–63 (9th Cir. 1993). To determine whether a plea agreement "specifically establishes" an offense, the Supreme Court has explained that we are to interpret a plea agreement the same way we would interpret a contract. *Braxton*, 500 U.S. at 350.

*Braxton* provides the rule that controls the outcome of this appeal. There, federal marshals executed a warrant to arrest Braxton at his home. *Id.* at 345. In the process of doing so, one marshal kicked in the front door. *Id.* Braxton admitted that he fired a shot through the door opening and that the "gunshot lodged in the front door just above the doorknob." *Id*. He later entered a guilty plea for assaulting a federal marshal and using a firearm during a crime of

violence. *Id.* Over his objections, the district court "in essence sentenced Braxton as though he had been convicted of attempted killing." *Id.* at 346. The Fourth Circuit upheld the sentence, concluding that the district court had not erred when it decided the stipulated facts "specifically established" that Braxton had committed attempted murder. *Id.* at 349–50.

The Supreme Court reversed. It interpreted the parties' stipulated facts as a contract and held that the agreed-upon facts were ambiguous and did not establish that Braxton had shot *at* the marshals. *Id.* at 350–51. The Court emphasized that because Braxton stipulated that his shot lodged "in the front of the (inward-opening) door, it would be unreasonable to conclude that Braxton was *shooting at* the marshals unless it was also stipulated that the marshals had entered the room." *Id.* at 350 (emphasis in original). The Court observed: "That was not stipulated, and does not appear to have been the fact." *Id.* The Court further explained that attempted murder requires the specific intent to kill, so even if the stipulation had supported the finding that Braxton had shot at the marshals, there was "nothing in the stipulation from which [the specific intent to kill] could even be *inferred*." *Id.* at 351 (emphasis in original). Indeed, the record showed that, at the plea hearing, Braxton emphatically denied having had such intent. *Id*. at 351. Because the stipulated facts did not "specifically establish" that Braxton committed the crime of attempted murder, the Court remanded for resentencing. *Id.*

*Braxton* instructs that a plea agreement must evince a defendant's stipulation to facts that unambiguously establish the required elements of a separate offense in order for the separate offense to be treated as "specifically established" for purposes of sentencing. *Id.*; *see also United States v.*

*Gutierrez-Sanchez*, 587 F.3d 904, 907–08 (9th Cir. 2009). As the Court explained, "a stipulation that at best supports two reasonable readings" does not specifically establish an additional offense. *Braxton*, 500 U.S. at 351.

Applying *Braxton*'s rule to Greene's case, a conviction for federal carjacking requires the government to prove that the defendant "with the intent to cause death or serious bodily harm[,] [took] a motor vehicle . . . from the person or presence of another by force and violence or by intimidation." 18 U.S.C. § 2119. The Supreme Court has explained that "Congress' inclusion of the intent element [in § 2119] requires the Government to prove beyond a reasonable doubt that the defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary to complete the taking of the car." *Holloway v. United States*, 526 U.S. 1, 11–12 (1999). "[A]n empty threat, or intimidating bluff, . . . is not enough to satisfy § 2119's specific intent element." *Id.* at 11.

Greene's plea agreement stipulated only that "using the BB-gun to intimidate a vehicle owner, [he] stole a vehicle, namely, a 2010 Honda Accord." This stipulation does not specifically establish the mens rea for § 2119 carjacking because it does not unambiguously support the conclusion that Greene had the specific "intent to cause death or serious bodily harm." 18 U.S.C. § 2119; *see Braxton*, 500 U.S. at 350–51. To the contrary, the plea agreement specifically established only that Greene acted "to intimidate"—which is not sufficient to establish the mens rea required for a § 2119 conviction. *Braxton*, 500 U.S. at 350–51; *see Holloway*, 526 U.S. at 12. Because the stipulated facts fell short of establishing all elements of a § 2119 carjacking, this offense should not have served as the base offense for the calculation of Greene's Guidelines range.

The government's arguments to the contrary are unavailing. First, the government argues that it was permissible for the district court to infer that Greene intended to cause severe bodily injury because the facts are similar to those that have been found to be sufficient evidence to support a jury verdict or a guilty plea for federal carjacking. In support, the government cites *United States v. Bailey*, 819 F.3d 92, 96–97 (4th Cir. 2016) (collecting cases addressing sufficient evidence for a jury verdict), and *United States v. Matos-Quinones*, 456 F.3d 14, 22 (1st Cir. 2006) (finding sufficient evidence to support a guilty plea). This argument fails because sufficiency of the evidence is not the relevant inquiry. Rather than asking whether any rational jury could have decided that Greene had the requisite intent to inflict death or serious bodily injury, *Braxton* requires that we ask whether "the only reasonable conclusion that could be reached when considering the stipulation" is that the defendant committed an additional offense. *United States v. Mun*, 41 F.3d 409, 412 (9th Cir. 1994) (distinguishing USSG § 1B1.2(a) from other Guidelines sections that expressly permit district courts to find facts relevant to additional offenses).

Second, the government argues that the court's error was not plain because the parties intended to stipulate to facts that establish carjacking. This argument again misses the mark. The Sentencing Guidelines make clear that the crime used to calculate the base offense level is either the crime of conviction or an offense that is specifically established by the stipulated facts in the plea agreement (written or made orally on the record). USSG § 1B1.2(a), (c). And *Braxton* is clear that we interpret the plea agreement as we would a contract. The government may have intended that Greene would stipulate to carjacking under § 2119, but the parties'

written agreement says otherwise; it states only that Greene acted with the intent to intimidate, not that he acted with the intent to cause death or serious bodily injury. *See United States v. Bah*, 439 F.3d 423, 429–30 (8th Cir. 2006) (holding that a stipulated plea agreement did not establish knowledge of fraud when the government acquiesced to defendant's deletion of a key asserted fact from the plea agreement).

We applied this rule in *Lawton*. There, we held that a plea agreement that described false statements co-defendants made to the FBI to account for their child's injuries could not form the basis of pseudo-counts of aggravated assault, because the co-defendants expressly stipulated that the explanations they gave to the FBI had been false. *Lawton*, 193 F.3d at 1094. Just as the stipulated facts in *Lawton* did not support a conviction for aggravated assault, Greene stipulated only that he intended to intimidate. This falls conspicuously short of the mens rea necessary to convict for § 2119 carjacking. *Holloway*, 526 U.S. at 11–12.**[3]**

---

[3] The Fifth, Seventh, Eighth and Eleventh Circuits similarly apply *Braxton*. *See United States v. Domino*, 62 F.3d 716, 722 (5th Cir. 1995) (holding that defendant stipulated only to using "a telephone to call a DEA agent about purchasing [a chemical] for the purpose of manufacturing a controlled substance," which did not specifically establish that he possessed the chemical); *United States v. Loos*, 165 F.3d 504, 506–07 (7th Cir. 1998) (holding that the offense of "endangering human life while manufacturing a controlled substance" was specifically established because defendants admitted during the plea colloquy "they had caused a serious fire in an occupied building while trying to make illegal drugs"); *Bah*, 439 F.3d at 429–30 (holding that a stipulated plea agreement did not specifically establish knowledge of fraud); *United States v. Saavedra*, 148 F.3d 1311, 1314–15 (11th Cir. 1998) (holding that because neither the indictment nor the plea agreement mentioned proximity to a school, the base offense could not be pegged to

In cases where we have reached the opposite conclusion, such as *United States v. Saldana*, 12 F.3d 160, 162–63 (9th Cir. 1993), the stipulated facts left nothing to infer and specifically established all elements of the additional offense. The defendant in *Saldana* admitted that he had "acquired [food stamps] to which he was not legally entitled[] by unlawfully buying them," sometimes trading large quantities of cocaine for thousands of dollars in food stamps. *Id.* at 161, 163 (quotation marks omitted). We held that Saldana's admission specifically established that he "knew that he had acquired food stamps in an unauthorized manner." *Id.* at 163. Our conclusion in *Saldana* did not require any inferential leap: the plea agreement included the stipulation that the defendant admitted to acquiring food stamps he was not legally authorized to receive. *Accord Gutierrez-Sanchez*, 587 F.3d at 907 (holding defendant's admission of his knowledge of a prior deportation order, which stated that he was prohibited from re-entering the country without permission, was sufficient to demonstrate that he knew he was in the country unlawfully).

Our case law does not permit district courts to infer a defendant's mental state from ambiguous facts in a plea agreement, even if the inference is "reasonable," as the government argues. And without facts specifically establishing the requisite mens rea, it was error to treat § 2119 carjacking as a pseudo-offense for the calculation of Greene's offense level. After *Braxton*, this error was plain.

---

distribution of controlled substances near a school). As the Seventh Circuit observed in *United States v. Loos*, a defendant's "protection against undue severity lies . . . in taking seriously the requirement that the basis of the more serious offense be established 'specifically.'" 165 F.3d at 508.

## B

Turning to the third prong of the plain error test, we are persuaded that the error in the Guidelines calculation affected Greene's substantial rights. *Olano*, 507 U.S. at 734. By relying on a base offense of § 2119 carjacking, the court calculated Greene's total offense level as 30, two levels higher than the total offense level would have been if based on the Hobbs Act robbery conviction. With Greene's criminal history score, the Guidelines range premised on Hobbs Act robbery would have been 87–108 months, roughly two years shorter than the incorrectly calculated Guidelines range of 108–135 months. All sentencing proceedings must begin with the correctly calculated Guidelines range; an incorrectly calculated Guidelines range is procedural error. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). When a Guidelines range is incorrectly calculated, "the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016).

Caselaw identifies two narrow exceptions to *Molina-Martinez*'s general rule that an incorrectly calculated Guidelines range affects a defendant's substantial rights, but neither exception applies here. First, in "unusual circumstances," the record may show that the sentencing court provided an explanation that persuades us "the judge based the sentence he or she selected on factors independent of the Guidelines." *Id.* at 200–01. In such cases, the incorrect Guidelines calculation will not be prejudicial. Second, an erroneous Guidelines calculation may be harmless "where the evidence is insufficient to demonstrate that a correct calculation would have generated a lower

Guidelines range." *United States v. Halamek*, 5 F.4th 1081, 1091 (9th Cir. 2021) (citations and quotation marks omitted).

Nothing in the record demonstrates that Greene's sentence was based "on factors independent of the Guidelines" range. *Molina-Martinez*, 578 U.S. at 200. In describing its justification for Greene's sentence, the court first stated, "[t]he advisory guidelines account for the nature of the offense, . . . use of a dangerous weapon, carjacking, and [Greene's] acceptance of responsibility and [Greene's] criminal history." The court then sentenced Greene to 120 months, which was in the middle of the erroneously calculated range.

The record shows that in reaching this mid-Guidelines sentence, the judge carefully considered and balanced Greene's serious offenses against factors suggesting he had a strong potential for rehabilitation. The court commented on the severity of Greene's crimes and the trauma he caused his victims, but the court also weighed the mitigating evidence, noting it was "impacted by the number of letters" expressing support for Greene, and that it could "kind of see the reason" for Greene's actions. The court stated that the sentence could have been higher, but Greene's "character and characteristics" indicated that the sentence was fair. We cannot definitively say that Greene's sentence would have been lower had the court used a correctly calculated Guidelines range. However, this case does not present the unusual circumstance where we can say the error was harmless because the record does not show that the district court relied on factors independent of the Guidelines. *Id.*

Nor is Greene's case an example of the second exception to *Molina-Martinez*'s rule that a plain Guidelines calculation error generally warrants remand, because the record shows

that basing Greene's offense level on Hobbs Act robbery would have resulted in a different Guidelines range. *See Halamek*, 5 F.4th at 1091. As explained, the district court's reliance on the base offense level for carjacking resulted in a Guidelines range of 108–135 months, in contrast to the correctly calculated range of 87–108 months.

The government attempts to avoid this conclusion by arguing that the two-level enhancement for an "offense [that] involved carjacking," USSG § 2B3.1(b)(5), could have applied to a different offense. More specifically, the government argues that the court could have treated the April 15 vehicle theft described in the plea agreement as a Hobbs Act robbery of a vehicle. USSG § 2B3.1(b)(5); *see United States v. Shaw*, 91 F.3d 86, 88 (9th Cir. 1996) (affirming application of the two-point carjacking enhancement to Hobbs Act robbery when robbers committed a carjacking while escaping from an armed robbery). This argument is premised on the theory that the April 15 crime "involved carjacking" under the definition of carjacking in the Guidelines Commentary. *See* USSG § 2B3.1(b)(5) & cmt. n.1.[4]

---

[4] The Commentary defines "carjacking" as "the taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation," and conspicuously lacks the statutory mens rea. *Compare* USSG § 2B3.1(b)(5) & cmt. n.1 (defining carjacking with no mens rea element), *with* 18 U.S.C. § 2119 (requiring "intent to cause death or serious bodily harm"). The parties dispute which definition district courts should use when applying the two-level enhancement to a base offense that "involved carjacking." USSG § 2B3.1(b)(5). Because we hold that the stipulated facts of the April 15 car theft did not specifically establish a Hobbs Act robbery or a § 2119 carjacking, we do not reach this issue.

The government's alternative argument fails because in order for the § 2B3.1(b)(5) enhancement to apply, the stipulated facts in the plea agreement must have specifically established that the April 15 vehicle theft qualified as a Hobbs Act robbery. USSG § 1B1.2(c); *see Braxton*, 500 U.S. at 349–51. A conviction for Hobbs Act robbery requires the government to prove that the defendant "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce, by robbery or extortion." 18 U.S.C. § 1951(a). The robbery of a business is typically sufficient to show an impact to interstate commerce. *United States v. Rodriguez*, 360 F.3d 949, 955 (9th Cir. 2004). The seven pseudo-counts of Hobbs Act robbery satisfy the interstate commerce element because they involved theft of gas stations or convenience stores, which is understood to establish that the robbery took place in interstate commerce. *Id.* But Hobbs Act robbery of an individual requires proof that the robbery had "a probable or potential impact" on interstate commerce, either directly or indirectly. *United States v. Lynch*, 437 F.3d 902, 909–10 (9th Cir. 2006) (en banc) (per curiam) (quoting *United States v. Hunyh*, 60 F.3d 1386, 1389 (9th Cir. 1995)), *overruled in part on other grounds by United States v. Lucas*, 101 F.4th 1158, 1159 (9th Cir. 2024) (en banc). *Lynch* went on to specify that the impact can either be "direct or indirect." *Id.* (citing *United States v. Collins*, 40 F.3d 95, 99 (5th Cir. 1994)). While this is not a high burden for the government, the broad authority of the Commerce Clause does not permit the federal government to "convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *United States v. Tuan Ngoc Luong*, 965 F.3d 973, 981–82 (9th Cir. 2020) (quoting *United States v. Lopez*, 514 U.S. 549, 567 (1995)).

Greene's stipulation regarding the April 15 vehicle theft was that Greene, "using the BB-gun to intimidate a vehicle owner, stole a vehicle, namely, a 2010 Honda Accord." The theft of a single vehicle from an individual is not sufficient to establish the de minimis effect on interstate commerce as required for a Hobbs Act robbery. Therefore, the stipulated facts do not establish that the April 15 vehicle theft was a Hobbs Act robbery. *See Collins*, 40 F.3d at 99–101 (holding theft of single vehicle was insufficient to show de minimis indirect effect on interstate commerce, even though the victim was unable to travel to a business meeting or make business calls with his cell phone). Contrary to the government's argument, the plea agreement did not specifically establish a base offense to which the carjacking enhancement could be attached.

The record shows that "a correct calculation would have generated a lower Guidelines range," *Halamek*, 5 F.4th at 1091 (quotation marks omitted), and that neither of the exceptions to *Molina-Martinez* applies. *Molina-Martinez*, 578 U.S. at 201. Therefore, the third prong of the plain error standard is satisfied.

## C

Turning to the fourth prong of plain error review, we exercise our discretion to correct the error because, on the facts of this case, the miscalculated base offense level "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (alteration in original) (citation omitted). As the Supreme Court has explained, "[a] plain Guidelines error that affects a defendant's substantial rights is precisely the type of error that ordinarily warrants relief." *Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018); *id.* at 144–45 (reversing a

sentence based on an incorrectly calculated range, even though the imposed sentence fell within the correctly calculated range).  *Rosales-Mireles* reasoned that a failure to correct errors "that threaten to require individuals to linger longer in federal prison than the law demands" would "rightly" lead reasonable citizens to question the integrity of the judicial process.  *Id.* at 141.  The Court recognized that "any exercise of discretion at the fourth prong of *Olano* inherently requires 'a case-specific and fact-intensive inquiry,'" and observed "[t]here may be instances where countervailing factors" indicate a correction is not necessary. *Id.* at 142 (citation omitted).  We see no such factors here.

We reverse and remand for resentencing.  *United States v. Matthews*, 278 F.3d 880, 885–86 (9th Cir. 2002) (en banc). In accord with our typical practice, we "remand for resentencing on an open record—that is, without limitation on the evidence that the district court may consider."  *Id.* at 855.

**REVERSED and REMANDED.**